IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LORI MALLORY, on behalf of herself and others similarly situated,** | Case No.2:20-cv-240 |
| Plaintiff, | Judge Michael H. Watson |
| vs. | Magistrate Judge Kimberly A. Jolson |
| **ACLARA SMART GRID SOLUTIONS, LLC,** | **JOINT MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | |

Representative Plaintiff Lori Mallory and Defendant Aclara Smart Grid Solutions, LLC respectfully move this Court to approve the Fair Labor Standards Act ("FLSA") settlement reached by the Parties and memorialized in the attached Settlement Agreement and Release ("Settlement" or "Agreement"). The Settlement was reached by experienced counsel during arms-length, good faith negotiations with the aid of a private mediator who is experienced in FLSA cases.

The settlement documents submitted for approval or entry by the Court consist of the following:

**Exhibit 1: Settlement Agreement and Release**

**Exhibit 2: Proposed Notice**

**Exhibit 3: Declaration of Jeffrey J. Moyle**

**Exhibit 4: Proposed Order of Dismissal and Approving Settlement**

The following Memorandum in Support explains the nature of the action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

1

Respectfully submitted,

/s/ Jeffrey J. Moyle
Jeffrey J. Moyle (0084854)
Christopher J. Lalak (0090079)
NILGES DRAHER LLC
614 West Superior Ave.
Suite 1148
Phone: (216) 230-2955
Cleveland, OH 44113
jmoyle@ohlaborlaw.com
clalak@ohlaborlaw.com

Shannon M. Draher (0074304)
Hans A. Nilges (0076017)
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
Phone: (330) 470-4428
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

*Counsel for Plaintiff*

/s/  Jamie M. Goetz-Anderson (via email consent)
David K. Montgomery (0040276)
Jamie M. Goetz-Anderson (0083562)
JACKSON LEWIS PC
PNC Center, 26th Floor
201 East 5th Street
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile: (513) 898-0051
David.Montgomery@jacksonlewis.com
Jamie.Goetz-Anderson@jacksonlewis.com

*Counsel for Defendant*

**MEMORANDUM IN SUPPORT**

I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

    A. **Lawsuit and Settlement**

On January 16, 2020, Named Plaintiff Lori Mallory ("Plaintiff") filed this lawsuit against Defendant Aclara Smart Grid Solutions, LLC ("Defendant") on behalf of herself and other allegedly similarly situated current and former independent contractors of Defendant, alleging overtime and minimum wage violations under the FLSA. (*See* Declaration of Jeffrey J. Moyle, attached as Exhibit 3 (hereinafter "Moyle Decl."), ¶ 7). Specifically, Plaintiff alleged that Defendant misclassified her and other similarly situated individuals (collectively, the "Class") as independent contractors, causing the Class not to be paid the federal minimum wage for all hours worked, or one and one-half times their regular rates of pay for all hours worked in excess of 40 hours per workweek. (*Id.* ¶ 8). On February 27, 2020, Defendant filed its Answer to the Complaint, and on February 28, 2020, Defendant filed an Amended Answer to the Complaint. (ECF, Dkt. Nos. 7, 8). In its Answer and Amended Answer, Defendant denied the material allegations in Plaintiff's Complaint, and has consistently denied any liability or wrongdoing to Plaintiff or the Class. (*Id.* ¶ 9).

Soon after Defendant's Answer was filed, the Parties discussed whether settlement of this case was feasible, and agreed to engage a private mediator to facilitate settlement discussions. The Parties engaged David P. Kamp, a Partner with the law firm of Dinsmore & Shohl LLP in Cincinnati, Ohio, to mediate this case. (*Id.* ¶ 10).

In advance of mediation, Defendant provided Plaintiff pay records for 138 Customer Service Representatives worked for Defendant as independent contractors between January 17, 2017 and May 26, 2020, as well as records reflecting when each Customer Service Representative were logged in to Defendant's computer system, indicating that person was "on duty." (*Id.* ¶ 11).

1

Plaintiff's Counsel engaged a consultant (a Ph.D-level economist) to evaluate the records and create a mathematical damages model for the class. (*Id.* ¶ 12). The Parties engaged in mediation in Cincinnati, Ohio on August 26, 2020 with Mediator Kamp, and the Parties were able to reach a settlement at mediation. (*Id.* ¶ 14).

  **B.** **Settlement Terms**

The gross settlement amount is $125,000, which will cover: (a) all individual payments to each class member who opts in to the settlement; (b) a service award of $3,500 to Plaintiff for her services in bringing and prosecuting this Action (for which she will provide Defendant a global release of any potential claims she may have against it); (c) Plaintiffs' Counsel's attorney fees and expenses; and (d) the cost of settlement administration. (Moyle Decl. ¶ 15). The settlement class will include all 138 Customer Service Representatives employed by Defendant as independent contractors between January 17, 2017 and May 26, 2020 for whom Defendant provided Plaintiff time and pay data in advance of mediation. (the "Settlement Class"). (*Id*. ¶ 16).

If the Court approves the Settlement, notice would be sent to members of the Settlement Class informing them of the Settlement and giving them the opportunity to join the lawsuit. Settlement Class members who timely return the Claim Form and Release will receive a monetary payment calculated proportionally based on the number of workweeks each potential class member worked during the period of January 17, 2017 and May 26, 2020. Any funds that are not claimed by the Settlement Class will revert to Defendant. (*Id*. ¶ 17).

In exchange for these payments and other consideration provided for in the Agreement, this Action will be dismissed with prejudice, and class members who opt in to the settlement will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action asserted in the Complaint or those wage-and-hour claims which could have been asserted in the Action. (*Id*. ¶ 18).

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Jeffrey J. Moyle, and as explained below, Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D.Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3. As shown below and in the Declaration of Jeffrey J. Moyle, this standard supports approval of the Settlement.

3

1. **No Indicia of Fraud or Collusion Exists**

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Here, the Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid overtime. The Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a neutral mediator who is a well-respected and experienced attorney. (Moyle Decl., ¶¶ 5, 6, 10). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

2. **The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties disagree over the merits of Plaintiff's claims. Plaintiff contends that Defendant misclassified her and other similarly situated employees as independent contractors, and, as a result, failed to compensate them for overtime and/or failed to pay them the minimum wage. Defendant denies these assertions, and denies that Plaintiff and the putative class were misclassified. The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and

whether Plaintiff and the class would be entitled to liquidated damages if they were to prevail on the merits. (Moyle Decl., ¶¶ 8–9).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Settlement Class promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (*Id*. ¶¶ 19-21).

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. Plaintiff's Counsel was able to review Plaintiff's documentation related to her contractual relationship with Defendant so that they could make an informed decision regarding the strength of their claims. (Moyle Decl., ¶ 13). Defendant similarly performed a significant amount of research and factual investigation of the claims raised by Plaintiff. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. In addition, Defendant produced timekeeping and payroll records in advance of mediation, and Plaintiff engaged an expert to review those records and create a damages model, which Plaintiff shared with Defendant. (*Id*. ¶¶ 11–12).

### 4. The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the

5

Class would receive no compensation. By settling the case, the Parties and Class Members bypass the inherent risks of litigation and achieve finality on this matter.

### 5. The Opinions of Class Counsel and the Class Representative Favor Approval

Class Counsel is highly experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the class as a whole, as described in the Declaration of Jeffrey J. Moyle. (Moyle Decl., ¶¶ 19–20). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). It should also be noted that Plaintiff favors approval of this settlement. (Moyle Decl., ¶ 22). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members

If the Court approves the settlement, Class Members will receive notice of the settlement and be given the option to join the settlement. Thus, Class Members are not bound by the Settlement Agreement if it is approved by the Court. As such, Class Members will be able to decide for themselves whether they want to participate in the Settlement.

### 7. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). Like in *Wright*, "the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in

further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Plaintiff and the Class.

#### 1. The Individual Payments Are Reasonable and Adequate

As mentioned above, as part of their pre-mediation evaluation, Plaintiff's counsel retained an economist to analyze the class data provided by Defendant's counsel. According to Plaintiff's Counsel's pre-mediation calculations based on the economist's analysis, the total amount of unpaid wages assuming a two-year statute of limitations was $93,942.53, and $132,815.30 assuming a three-year statute of limitations. (Moyle Decl., ¶ 23). Of course, these numbers assume that this case is litigated to a verdict, and does not account for damages that may become "stale" (*i.e.*, fall outside of the limitations period) by the time a verdict is rendered. Thus, the Settlement Fund of $125,000 exceeds 100% of the calculated amount of damages on a two-year basis, and represents approximately 95% of damages on a three-year basis, before fees, costs, and a service payment. These objective calculations support Plaintiff's counsel experiential opinion that the proposed settlement is fair, adequate, and reasonable.

All individual payments will be calculated proportionally based on the number of workweeks each Settlement Class member worked during the period of January 17, 2017 and May 26, 2020. (Moyle Decl. ¶ 17). As such, each Class Member has the opportunity to obtain

7

compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

### 2. Plaintiff's Service Award Is Proper and Reasonable

The Settlement Agreement provides for a service award of $3,500.00 to Plaintiff, in addition to her individual payment. Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

Here, Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiff's counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. Further, Plaintiff was available and provided settlement guidance in advance of and throughout the day-long mediation. As such, the time and efforts Plaintiff provided supports the requested service payments. (Moyle Decl. ¶ 24).

### 3. The Attorney Fees to Plaintiff's' Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to the Settlement Class, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court approve as reasonable attorneys' fees of $41,666.67, representing one-third of the settlement fund. In the Southern District of Ohio, "an award of one-third of the settlement fund as a fee award… is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)). This is consistent with numerous other wage and hour cases in which a court has approved an award of attorneys' fees of one-third of the settlement amount. *See, e.g., Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, *15 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same).

9

Further, Plaintiff's counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Moyle Decl. ¶ 26). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

In addition, while a crosscheck using Plaintiff's Counsel's Lodestar amount is not required, Class Counsel's lodestar for this case demonstrates that the requested attorneys' fees are fair and reasonable.  Plaintiff's counsel spent approximately 45 "billable" hours of time on this case. Applying an hourly rate of $350.00 per hour, Plaintiff's counsel's lodestar is approximately $15,750.  (Moyle Decl. ¶ 27).  Thus, an attorneys' fee award of $41,666.67 represents a lodestar multiplier of approximately 2.65, which is well within the range of attorneys' fee awards that this Court has approved in other wage and hour class and collective cases. *See, e.g., Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *14-15 (S.D. Ohio Jan. 17, 2019) (approving a fee award of $348,689.50 in a wage and hour case, where the lodestar was $110,046.50); *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *18 (S.D. Ohio Dec. 3, 2019) ("courts frequently approve attorney's fee awards equaling two to three times the lodestar amount"); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17 (S.D. Ohio Oct. 3, 2018) (finding that a fee award of 2.9 times the lodestar was "well within the acceptable range of multipliers for [wage and hour] cases"); *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) ("a lodestar multiplier of approximately 2.5…is typical of lodestar multipliers in similar [wage and hour] cases").

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case

Plaintiff's counsel should also be reimbursed their out-of-pocket expenses and costs in the amount of $4,355.90, and the Court should approve the payment from the settlement fund to a third-party settlement administrator for distributing notice, collecting responses, and preparing and mailing checks and necessary tax documents to the class members who opt in to the settlement. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Plaintiff's counsel incurred out-of-pocket costs and expenses totaling $4,355.90. Of this amount, $3,025 was for fees paid to a consultant for creating a damages model, $410.70 was for the filing fee and related expenses, and the remaining $920.20 represents travel costs and expenses for Plaintiff's counsel to attend mediation in Cincinnati. (Moyle Decl. ¶ 28). Because these costs and expenses are reasonable and were incurred in the

11

prosecution of Plaintiff's claims and in administration of the settlement, the Court should award Plaintiff's counsel reimbursement of these costs and expenses from the settlement fund.

### III. CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order of Dismissal and Approving Settlement; (2) approve Plaintiff's Counsel's request for attorney fees, costs, and expenses; (3) approve the requested service payments; and (4) retain jurisdiction to enforce the Settlement if necessary.

Respectfully submitted,

| | |
|---|---|
| /s/ Jeffrey J. Moyle | /s/   Jamie M. Goetz-Anderson (via email consent) |
| Jeffrey J. Moyle (0084854) | David K. Montgomery (0040276) |
| Christopher J. Lalak (0090079) | Jamie M. Goetz-Anderson (0083562) |
| NILGES DRAHER LLC | JACKSON LEWIS PC |
| 614 West Superior Ave. | PNC Center, 26th Floor |
| Suite 1148 | 201 East 5th Street |
| Phone: (216) 230-2955 | Cincinnati, OH 45202 |
| Cleveland, OH 44113 | Telephone: (513) 898-0050 |
| jmoyle@ohlaborlaw.com | Facsimile: (513) 898-0051 |
| clalak@ohlaborlaw.com | David.Montgomery@jacksonlewis.com |
| | Jamie.Goetz-Anderson@jacksonlewis.com |
| Shannon M. Draher (0074304) | |
| Hans A. Nilges (0076017) | *Counsel for Defendant* |
| 7266 Portage Street, N.W., Suite D | |
| Massillon, OH 44646 | |
| Phone: (330) 470-4428 | |
| hans@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |

*Counsel for Plaintiff*